EXHIBIT A

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>Denver City and County Building<br>1437 Bannock Street<br>Denver, CO 80202<br>(720) 865-8301 | |
| **WILLIAM SELBY,**<br><br>    Plaintiff,<br><br>v.<br><br>**HANNOVER LIFE REASSURANCE COMPANY OF AMERICA,**<br><br>    Defendant. | ^COURT USE ONLY^ |
| James L. Abrams (Colo. Reg. No.11795)<br>401 Westwood Drive<br>Denver, Colorado 80206<br>(303) 321-6087<br>abramsjim@gmail.com<br><br>Robert L. Allman (Colo. Reg. No. 8184)<br>Allman, Mitzner & Fawley, LLC<br>4100 E. Mississippi Ave., Suite 1600<br>Denver, Colorado 80246<br>(303) 293-9393<br>(303) 293-3130 (fax)<br>rallman@allman-mitzner.com | Case No. 2020cv32248<br><br>Div. 414 |
| AMENDED COMPLAINT AND JURY DEMAND | |

Plaintiff, William Selby, by and through his undersigned attorneys, hereby submits this Amended Complaint and Jury Demand against Hannover Life Reassurance Company of America, as follows:

## GENERAL JURISDICTIONAL ALLEGATIONS

1. This action is brought pursuant to C.R.S. 24-34-401 *et seq.* (the Colorado Anti-Discrimination Act or CADA") and the Family and Medical Leave Act 29 U.S.C. 2601, *et seq.* ("FMLA").

2. Plaintiff and Defendants were at all the relevant times residents of the State of Colorado. Defendant is a corporation doing business in Denver, Colorado.

3. Venue is proper with this Court pursuant to C.R.C.P. 98(G) as all acts and omissions occurred in Colorado.

4. This action has been timely filed on July 2, 2020, and this Amended Complaint relates back to such filing date pursuant to C.R.C.P. 15.

## FACTUAL ALLEGATIONS

5. Plaintiff is 49 years old, and was diagnosed with Becker Muscular Dystrophy while employed by Defendant. He resides at 6428 S. Dallas Court, Englewood, CO 80111.

6. Plaintiff was hired by Christine Schmitz, an agent of Defendant, Hannover Life Reassurance Company of America, as a Systems Engineer I, on or about December 17, 2012.

7. Plaintiff was discharged on January 7, 2019. At that time, he held the position of IT Service Desk Analyst.

8. Plaintiff was told by Rhonda Watson when he was discharged that he could either: take all of the time to which he was entitled in order to restore himself medically to "100%" or take a six weeks' severance if Plaintiff promised not sue the Defendant.

9. Plaintiff received six performance evaluations.

10. All of Plaintiff's performance evaluations were satisfactory and confirmed Plaintiff met the Company's expectations.

At all times relevant, Plaintiff was performing his job in all respects without accommodation, although Plaintiff did request a chair with lumbar support on August 8, 2017 due to back pain.

11. Plaintiff was under treatment for chronic low back pain since 2012, and was undergoing continuing physical therapy for strengthening, all the while employed by Defendant.

12. Plaintiff saw his physician on or about Feb – March 2017 and, at his direction, commenced physical therapy in order to build up his physical strength on or about March of 2017.

13. Plaintiff attended physical therapy at Anchor Physical Therapy.

14. On or about March 1, 2018, Plaintiff was encouraged to consult with his physician due to his lack of progress with physical therapy.

15. On or about June 29, 2018 Plaintiff did consult his primary care physician, Daniel Grossman, who referred Plaintiff to a neurologist, Dr. Katalin J. Pocsine.

16. Dr. Pocsine, on or about July 31, 2018 referred Plaintiff to a second neurologist, Dr. Matthew Wicklund, who commenced diagnostic testing of Plaintiff, including a DNA test, in October of 2018, with results expected between October 29 and 31, 2018.

17. A preliminary diagnosis of Limb Girdle Muscular Dystrophy was made by Dr. Wicklund.

18. Subsequent to the DNA test, Dr. Wickland confirmed Becker Muscular Dystrophy.

19. After Dr. Wicklund commenced the DNA test, with results taking up to several months, Plaintiff returned to his primary care physician, Dr. Grossman who recommended continued physical therapy and palliative treatment during this period.

20. Plaintiff continued to work full time taking time off only for medical treatment, while awaiting his DNA results from Dr. Wicklund, and was coping with his diagnosis, with his symptoms remaining much the same as in the past, with Plaintiff's living and work abilities remaining relatively constant, the main difference being that Plaintiff finally had a diagnosis for his chronic pain and limited strength.

21. Since 2012, Defendant was and has been aware of Plaintiff's medical circumstances and needs.

22. Plaintiff was absent for the period from October 22, 2018 through November 5, 2018, at the suggestion and recommendation of the Prudential representative, Edward Woodcock, whom Plaintiff was working with in order to file a short term disability claim.

23. Plaintiff was denied Short Term Disability in that he could work, with or without accommodation.

24. Later Plaintiff was denied Social Security Disability Insurance benefits for the same reason.

25. While working for Defendant, Plaintiff performed all required tasks as per his job description.

26. Plaintiff never requested a modification of his job description nor did Defendant modify his job description.

27. Plaintiff rarely requested assistance in performing his assigned work, only requesting assistance in connection with such tasks as carrying items that were too heavy for him to carry, as had also been the custom prior to the recent diagnosis.

28. There was no undue hardship, undue burden or unreasonable accommodation requested or imposed upon the Defendant by the Plaintiff.

29. No such issues were documented in Plaintiff's personnel file.

30. No records of the occasional assistance Plaintiff received were maintained by the Defendant, and no complaints were directly to Plaintiff by Defendant.

31. No functional capacity testing was performed by Defendant which disclosed that the Plaintiff's requests for assistance were burdensome.

32. Plaintiff had received two notes from Dr. Grossman, one supporting him being excused from work, and one returning him to work with restrictions.

33. When Defendant received Plaintiff's note clearing his return to work, the company apparently interpreted the note as one where Plaintiff could return to work without restrictions.

34. Dr. Grossman then clarified his note by stating "Restrictions should be as indicated on the functional capacity evaluation dated October 15, 2018, with some limitations of bending, lifting, climbing and getting on and off the floor as indicated."

35. The restrictions paralleled the accommodations Plaintiff had been receiving for years.

36. Dr. Grossman did not state that Plaintiff was unable to work.

37. The preceding transactions were being managed by the company's HR representative, Ms. Ferreira.

38. Plaintiff's medical and medically-related expenses increased for the Defendant from the time of Plaintiff's diagnosis.

39. Plaintiff's work quality did not change from the time he was hired until he was fired, other than taking time off as recommended and authorized by the Defendant or by law.

40. Plaintiff did not sustain any criticism from either the company or individual users about his work or abilities and there was no triggering incident that provoked Plaintiff's discharge.

41. Plaintiff reported for work full-time, unless excused, until his discharge by Lisa Smith, Rhonda Watson, Paul Smith and Anna Westcott. Plaintiff never had any disciplinary event or performance evaluation with any of these individuals during his employment.

42. Plaintiff sought and received FMLA on or about June 21, 2018. Taking FMLA was recommended by the Defendant [Ms. Kimberly Ferreira].

43. This was intermittent FMLA and Plaintiff was concurrently working.

44. Plaintiff was written up [a "PIP" or Performance Improvement Plan] by Mr. Doug Tubaugh on June 27, 2018. This was exactly seven days after Plaintiff received a packet of information from the Benefits Department for Plaintiff to utilize FMLA.

45. The PIP was issued after the Defendant learned that Plaintiff had contracted a serious disability, which included a requirement of weekly meetings that Plaintiff was to schedule but which were often rescheduled or cancelled by his supervisor.

46. The PIP was issued by Defendant in order to facilitate Defendant's intentions to terminate Plaintiff's employment, and was pretextual now that Plaintiff had a diagnosed disability and was entitled to FMLA, even though Plaintiff was performing his job duties as before.

47. Defendant had actual knowledge that Plaintiff had a physical disability in that it read a letter from Anchor Physical Therapy dated August 8, 2017, and also knew of the more recent diagnosis of Becker's Muscular Dystrophy.

48. After Plaintiff's discharge, he filed a charge with the EEOC/CCRD. The agency never spoke to Plaintiff other than during his intake session to file a charge.

49. The agency made multiple administrative errors during its processing of the charge which were conveyed to it in connection with its Letter of Determination.

50. A substantial weight review is pending now before the Equal Employment Opportunity Commission, itself thereafter will be issuing a separate Notice of Right to Sue.

51. The Defendant did not follow its usual and customary human resources protocol.

52. Plaintiff's warning progressed from a Written Warning to a Termination.

53. There were no Verbal or Final Written Warnings.

54. To this day, Plaintiff has continued to work at a different employer performing substantially the same work as he did for Defendant, which fabricated reasons to discharge him.

55. Plaintiff requested reinstatement from Defendant and Defendant refused.

56. After Plaintiff was fired, he mitigated and resumed performing substantially similar work for an unrelated employer where he continues to be employed today.

57. Plaintiff seeks relief on the basis of unlawful discrimination against him on the basis of his disability in violation of C.R.S. §24-34-401, et seq., and Defendant's violation of FMLA requirements or retaliation against Plaintiff for exercising his rights under FMLA.

## FIRST CLAIM FOR RELIEF
(Colorado Antidiscrimination Act)

58.     The preceding paragraphs 1-57 are incorporated herein by reference.

59.     Plaintiff has a disability recognized under the Colorado Anti-Discrimination Act (CADA) and is entitled to protection from discrimination under the CADA as a result of this disability.

60.     The Plaintiff alleges that on or about January 7, 2019, and prior thereto, he was denied accommodations in his position as IT Service Desk Analyst based on his disability (Becker's Muscular Dystrophy) and/or in retaliation for engaging in protected activity.

61.     Moreover, the Plaintiff avers and on or about January 7, 2019, and prior thereto, he was subjected to discriminatory terms and conditions of employment based on his disability and/or in retaliation for engaging in protected activity.

62.     Plaintiff states that on or about January 7, 2019, he was harassed by his Supervisor based on his disability and/or in retaliation for engaging in protected activity; in fact, he was subjected to criticism for moving slowly, or talking to co-workers as was customary, or going to authorized doctor or medical visits, in a manner that was not criticized prior to the Defendant learning of Plaintiff's diagnosis of muscular dystrophy.

63.     Becker's Muscular Dystrophy is a slowly progressive disease and, other than the diagnosis, Plaintiff's condition was unchanged from before; he was still able to complete his tasks and work in a manner the employer, prior to the diagnosis, found satisfactory.

64.     The Defendant attempted to have Plaintiff take a severance or an extended leave of absence with a request or return to work at 100%, and retaliated against Plaintiff who chose to remain at work with an approved FMLA plan.

65.     The Defendant thereafter determined Plaintiff was to be terminated without further evaluation of any need for accommodation or other evaluation.

66.     Plaintiff would not have been terminated but for his disability and Plaintiff was fully capable of performing his job duties and staying within the medical restrictions.

67.     The request of a leave of absence and return at 100% health was an impossible condition for the disabled Plaintiff and was done to insure his future termination of employment.

68. Plaintiff alleges that on or about January 7, 2019, he was discharged based on his disability and/or in retaliation for engaging in protected activity in advising the Defendant regarding his disability and restrictions. Based on the preceding, Plaintiff has suffered the damages recited in the "Damages" section of this Complaint.

69. Plaintiff seeks such damages as allowed to him under the CADA.

## SECOND CLAIM FOR RELIEF
(Family and Medical Leave Act ["FMLA"])

70. The preceding paragraphs 1-69 are incorporated herein by reference.

71. Upon accepting the Employer's recommendation and encouragement to take FMLA leave, Plaintiff was subjected to discriminatory and retaliatory conduct almost immediately upon applying for FMLA leave.

72. Plaintiff was thereafter issued a PIP, the Employer having actual knowledge of Plaintiff's medical circumstances, and was ultimately discharged after the suggestion he take FMLA leave and the issuance a PIP, its expectations being made impossible to achieve.

73. The PIP was based upon conduct of Plaintiff that was previously deemed satisfactory and was done as a pretext in retaliation for Plaintiff exercising his FMLA rights and not wishing to take a leave of absence.

74. The Plaintiff continued to perform his work as before, asked for no accommodations other than allowed by FMLA, and his employment was terminated thereafter as a form of retaliation for using FMLA.

75. The Plaintiff's taking of approved FMLA played a substantial role in Defendant's termination of Plaintiff and determination that Plaintiff was to be terminated from employment.

76. Plaintiff was terminated as a result of his disability which included approved FMLA leave and was terminated for actually using the FMLA leave to which he was entitled due to Plaintiff's disability.

77. Plaintiff seeks damages as allowed to him under the FMLA.

## DAMAGES

Plaintiff seeks all available remedies at law, and including the inherent discretionary, equitable authority of this Court including, but not limited to: Lost wages including back pay and front pay; compensatory damages; punitive damages; restorative relief, i.e. a return to work order; attorneys' fees; costs; and interest, including prejudgment, post judgment, prejudgment on post judgment.

WHEREFORE, Plaintiff, William Selby, prays that this Court enter judgment in his favor and against the Defendant, Hannover Life Reassurance Company of America, for all damages and compensation as allowed, for all economic and non-economic damages as allowed, for consequential and special damages as allowed, for costs, including expert witness fees, for interest to the fullest extent provided by law, for interest as allowed, commencing with the date of the loss, reasonable attorneys' fees as allowed, together with costs including, but not limited to, expert witness fees, such other costs and other relief as may be allowed, and such other relief, including reinstatement of Plaintiff's employment with protective orders, as may be allowed.

## Jury Demand

Plaintiff demands trial to a jury of six persons on all issues herein joined.

Respectfully submitted this 21st day of August, 2020.

_____/s/ James L. Abrams_____
James L. Abrams
401 Westwood Drive
Denver, CO 80206
(303) 321-6087
abramsjim@gmail.com

Robert L. Allman, Esq.
Allman, Mitzner & Fawley, LLC
4100 E. Mississippi Ave., Suite 1600
Denver, CO 80246
(303) 293-9393
(303) 293-3130 (fax)
rallman@allman-mitzner.com

Attorneys for Plaintiff, William Selby

Plaintiff's Address:
6428 South Dallas Court
Englewood, CO 80111